COURT OF APPEALS OF VIRGINIA

Present: Judges McCullough, Decker and Senior Judge Felton

JENNIFER WISMAN

v.     Record No. 0451-15-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 10, 2015

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

(Shelly R. James, on brief), for appellant.

(Rachel Errett Figura, Assistant County Attorney; Lynn Svonavec,
Guardian *ad litem* for the infant child, on brief), for appellee.


Jennifer Wisman, appellant, appeals the ruling of the trial court finding that Harrisonburg

Rockingham Social Services District, HRSSD herein, was not asking for a change in custody in the

final child protective order and that HRSSD proved physical[1] custody should be transferred to the

child's grandmother. Finding no error by the trial court, we summarily affirm the trial court's

actions in issuing the child protective order. Rule 5A:27.

### Background

Appellant has two children, I.D. and K.B., ages nine and six respectively, each born to

different fathers. HRSSD first investigated the family in March of 2011. Mary Lou Frowd, the

social worker assigned to the case, determined the complaint was unfounded. Nevertheless, Frowd

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although appellant's assignment of error states "legal" custody, her argument in support of this error discusses Code § 16.1-278.2(A)(4) and physical custody; therefore, we consider the assignment of error in regard to physical custody.

offered services to the family. Appellant indicated the family was going to move out of state, causing Frowd not to follow up with the offer of services. At that time, the Community Services Board (CSB) was providing services to I.D. The CSB discontinued services, however, due to missed appointments.

In 2013, HRSSD received a new complaint and opened a new investigation. In September 2013, the juvenile and domestic relations district court (JDR court) entered a protective order, regarding I.D. and K.B., based on domestic violence issues between I.D.'s father, Aaron Dennison, and Misty Wisman, appellant's mother. Appellant and Dennison were also using marijuana, sometimes in the children's presence. Appellant maintained legal and physical custody of K.B. pursuant to the protective order, and the JDR court ordered her to comply with HRSSD.

In May 2014, appellant, Dennison and K.B.'s father were convicted of burglary-related charges. Appellant reported to Frowd that the three of them were addicted to synthetic marijuana, which led to the criminal behavior. Frowd attempted to provide services to appellant, but felt appellant was not appropriately following through with the offered programs. Appellant did, however, complete a parenting class, arranged by the Therapeutic Day Treatment (TDT) worker for I.D., and accepted in-home services.

Frowd expressed her concern that a new man, J.R. Morris, was staying at the one-bedroom, single-wide trailer with appellant, Misty, and K.B. Morris had a criminal record and was also subject to a HRSSD investigation regarding his son and their drug use. Appellant reported that K.B. would sleep on the floor of the bedroom where she and Morris slept.

The record clearly establishes I.D. needed significant services due to behavioral issues and developmental delays. I.D. exhibited anger control problems and violent outbursts. Appellant was unable to manage and follow through with the necessary treatment plan for I.D. As I.D.'s behaviors

continued to escalate, HRSSD removed him from the home and placed him in a residential treatment facility.

Soon after I.D. was removed from appellant's home, HRSSD placed K.B. with Sandra Boyd, K.B.'s paternal grandmother. Boyd had a large home and a job. Boyd arranged for dental care for K.B.'s rotting tooth, and her health and appearance generally improved while living with Boyd. K.B.'s performance in school, academically and behaviorally, also improved.

Appellant conceded the evidence supported a finding of abuse and neglect to support a protective order. Appellant argued, however, that while HRSSD claimed it was not asking for a change in custody, the effect of the order resulted in a change in legal custody by its requirements: transfer of physical custody and tendering control of medical and school decisions to Boyd. The trial court recognized that appellant had shown progress and there was no evidence of relapse since the JDR court entered the contested protective order. However, due to appellant's history of overt substance abuse and K.B.'s exposure to violence in the residence, the trial court found it necessary to order that K.B. remain in Boyd's home. The trial court found that Boyd would be a good "gate keeper" in monitoring appellant's progress and determining the appropriate amount of visitation and involvement between K.B. and appellant.

Analysis

Appellant first contends that the trial court erred by finding HRSSD was not asking for a change in legal custody. In support of this contention, appellant asserts that the effect of the order giving Boyd physical custody and decision-making power over K.B.'s education and medical care resulted in a change in legal custody, thus requiring a more stringent legal standard of proof that "no less drastic alternative" was available. Code § 16.1-278.2(A)(5).

"We are guided in our analysis by the familiar principle that '[i]n construing a statute, we look first to its plain language.'" Jones v. Div. of Child Support Enforcement, 19 Va. App. 184,

187, 450 S.E.2d 172, 174 (1994) (quoting Jennings v. Div. of Crime Victims' Comp., 5 Va. App. 536, 538, 365 S.E.2d 241, 243 (1988)).  A plain reading of the relevant statutes in this case leads us to conclude that the trial court did not transfer legal custody to Boyd and appropriately gave Boyd physical custody of K.B., having applied the correct standard in the case.

Code § 16.1-278.2 directs that when a child has been abused or neglected, as conceded in this case, the trial court has the ability to protect the child by limiting contact between the parent and child.  Further, the trial court may allow HRSSD to place the child in an appropriate family home without taking legal custody away from the parent.  Code § 16.1-278.2(A)(4).  In addition,

> [t]he local board or public agency and the parents or guardians shall enter into an agreement which *shall specify the responsibilities of each* for the care and control of the child.  The board or public agency that places the child *shall have the final authority to determine the appropriate placement* for the child.
>
> Any order allowing a local board or public agency to place a child *where legal custody remains with the parents* or guardians as provided in this section shall be entered only upon a finding by the court that *reasonable efforts have been made to prevent placement out of the home and that continued placement in the home would be contrary to the welfare of the child*; and the order shall so state.

Id.  If, however, the trial court or agency feels that there is "no less drastic alternative," it may "transfer legal custody."  Code § 16.1-278.2(A)(5).

Code § 16.1-278.2 does not define "legal custody."  Nevertheless, Code § 16.1-228, which defines terms to be applied in Chapter 11, which includes Code § 16.1-278.2, states in pertinent part:

> "Legal custody" means (i) a legal status created by court order which vests in a custodian the right to have physical custody of the child, *to determine and redetermine where and with whom he shall live*, the right and duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care, *all subject to any residual parental rights and responsibilities* . . . .

HRSSD specifically stated it did not request a change in legal custody. Thus, HRSSD sought to proceed under Code § 16.1-278.2(A)(4), allowing appellant to maintain legal custody. Such process required an agreement specifying the responsibilities of the guardian and parent in the care of the child. By stating that Boyd was "authorized to seek medical care for child and . . . make educational decisions for the child" the trial court did not relieve appellant of her parental rights to do the same. It merely specified that Boyd also had the legal authority to make medical and educational decisions on K.B.'s behalf.

Boyd was not allowed, however, to make determinations as to where and with whom K.B. could reside; that authority remained with HRSSD pursuant to Code § 16.1-278.2(A)(4). If the order had stated that Boyd could determine or "redetermine" where and with whom K.B. could live, as stated in the definition of legal custody in Code § 16.1-228, then it would appear that there was in effect a change in legal custody. However, the order only expressed certain responsibilities Boyd was authorized to exercise while K.B. remained in her care. Thus, the child protective order did not in effect change legal custody to Boyd, as appellant contends.

Appellant further argues the trial court erred by finding sufficient evidence to give Boyd physical custody. The record reflects that continued placement in the home would not benefit K.B.'s welfare. Appellant conceded the evidence supported a finding of abuse and neglect of K.B. Appellant admitted using drugs in front of the children and acknowledged her addiction to synthetic marijuana, which led to a felony burglary conviction. Appellant, due to her drug use, would be absent for days at a time. The children were exposed to domestic violence between I.D.'s father and appellant's mother. K.B. had a rotten tooth that needed, but was not getting, medical treatment. Appellant did not have stable employment and, therefore, was unable to maintain housing independent of her mother. Additionally, appellant allowed Morris, also under investigation by HRSSD, to stay in the trailer and sleep in the same room as her and K.B. Frowd reflected appellant

was unable to take responsibility for the conditions of the home and could not recognize that exposing the children to drug use and violence would have an effect on them. She described the home as "chaotic."

Once K.B. began to reside with Boyd, however, K.B. showed signs of significant progress. Boyd arranged to have the tooth treated, and K.B.'s hygiene and appearance improved. K.B.'s social interactions and academic performance also strengthened. Her TDT worker noted K.B. appeared "attentive" at school and "happier to learn."

All this evidence supports the trial court's conclusion that it was contrary to K.B.'s welfare to continue living in the home with appellant. Appellant had not demonstrated sustained ability to manage the care and nurturing of the children. While appellant showed some progress, as acknowledged by the trial court, there was no indication the conditions of the home, even with I.D.'s removal, would stabilize. The trial court imposed appropriate conditions for the care of K.B. and preserved appellant's parental rights until appellant could demonstrate long-term change in her parenting and living circumstances. Therefore, the trial court did not err in giving physical custody to Boyd.

The trial court did not err by finding HRSSD did not request change in custody, and the ordered conditions did not in effect give Boyd legal custody. Further, HRSSD presented sufficient evidence to support transferring physical custody to Boyd and the trial court applied the correct standard of proof. Accordingly, finding no error, we summarily affirm the trial court's issuance of the final child protective order. Rule 5A:27.

Affirmed.